## INTERNATIONAL CELLUCOTTON PRODUCTS CO. v. DIANA MFG. CO.

District Court, E. D. Wisconsin.
July 28, 1933.

Fisher, Clapp, Soans & Pond, Cyril A. Soans, and William E. Anderson, all of Chicago, Ill., and Lines, Spooner & Quarles, of Milwaukee, Wis., for plaintiff.

W. L. Evans, of Green Bay, Wis., G. P. Kimmel, of Washington, D. C., and S. L. Wheeler, of Milwaukee, Wis., for defendant.

GEIGER, District Judge.

I am satisfied that this case cannot be determined upon consideration of references cited against the patents to see whether they are within or without an "art" into which the latter may be first placed; and any attempt to fortify a contention respecting the analogy between a reference structure—cited or not cited—by taking note of patent office classification or divisions in which a patent may be found, or an application heard and examined, is simply futile; because, as plaintiff has quite clearly demonstrated, classification appears to be almost fortuitous. It is believed, however, that the merit of Bauer's machine may justly be examined and considered by its objective—limited as it originally was by the patentee in his specifications, and now by disclaimer filed pending this suit. This does not involve either the assumption nor necessity of demonstrating that the claims are invalid because too broad, but merely whether, in the light of the disclaimer, they validly claim as inventive a machine for making the particular type of bandage or pad—not a machine for wrapping or packing gum, candy, or other like articles. Yet, consistently with this, it may be assumed that both types of machines may have much in common—that each type, for example, may have elements to produce transmission of wrapper, of content (either intermittently or continuously), or for folding, and the like. That is, the structures have basic elements in combination, in common. Yet, while objectives, broadly analogous, and common elements more or less basic, may be conceded, particular problems, as I believe is true in the case before us, may arise for whose solution no hint or guide may be found. And Bauer, at the outset, in his specifications, asserted and now asserts his claim for recognition on that contention. The case is simplified when we see, first, that the patent office upheld that contention, and, secondly, in the proceedings, particularly on interference, addressed itself to the art references which sought to deal with the particular kind of pad whose manufacture was the subject of the interfering claims. The record is replete with a showing that Bauer's application was considered and allowed upon the theory that, while the references might or might not be analogous, that is, having the limited objective of Bauer (or Williams, in interference), yet, no reference met the disclosure. As the examiner put it—speaking of citations claimed to be anticipatory:

"There is no contention that the proposed claims are not properly applicable to both disclosures * * * They are definately restricted to the feeding of a strip of gauze and a strip of wadding, and unless the machines cited for such anticipations have means adapted to feed such materials, they are not available as references. The claims are not distinguished from prior art merely by reference to the use of different materials, assuming that the prior art machines were equally capable of working on either material."

Thereupon citations were more particularly reviewed to determine their not mere-

ly general pertinency, but rather, their availability on claimed anticipation of claims then before the office, and now before the court. In such review of suggested combinations of one or more of the references, it was further observed in substance that on some there was clear unadaptability of their devices "to feed the material," of the interfering structures, and "if the machines in the patents to Kempf, Evans, Knott, and Miller are incapable of feeding gauze and wadding, they are not properly anticipative of claims 32 to 38; and suggested combinations with the Marcus machine which does feed cheese-cloth or gauze and wadding are not obvious. There is no depositing mechanism in addition to the feeding and severing means, in the Marcus patent and hence the patent does not meeet claim 38."

These excerpts are taken not merely to show a view of particular claims—such as 32 to 38—above referred to as such claims may have then stood, but more importantly to disclose the estimate placed by the Patent Office upon the novel character of means, and the added elements in a combination to accomplish the objective of successfully and expeditiously making the pads—that is, to deal with the use of gauze and wadding. The claims now in suit assert that aspect of Bauer; and the office, apparently, aimed to give unqualified indorsement of their patentable novelty—whether references be in the immediate art as Bauer sought to define it; or upon the larger—and, may be, analogous—art as defendants now, as in the Patent Office, sought and now seek to define it.

Now, upon this basis of considering Bauer's structure, that is, that the claims in question disclose a patentably novel advance, within the limited field indicated in his specifications, and that the class of his structure was thereby likewise limited, it would seem unjust to consider Leibing patent 1,469,420, as even arousing a doubt. Whatever credit may be given that patent rests upon considerations arising out of limited adaptability and objective of his (Leibing's) machine, i. e., making pads out of excelsior, and like fibers, for "packing material." And thus we may recur to the observation of the Examiner (supra) that, for example, as between Bauer and Leibing, there is no basis for assuming that both their "machines were equally capable of working on either material." On the contrary, no one would suggest that Leibing's machine or his method could be used or practiced to make Bauer's pads.

Upon these considerations, the Bauer patent should be held valid and infringed as to claims in suit; and a decree may be entered accordingly.