## INTERNATIONAL CELLUCOTTON PRODUCTS CO. v. STERILEK CO., Inc.

### No. 2855.

District Court, N. D. New York.

Dec. 31, 1936.

Fuller, Brown, Hubbard & Felt, of Utica, N. Y. (Cyril A. Soans, of Fisher, Clapp, Soans & Pond, of Chicago, Ill., of counsel), for plaintiff.

Kernan & Kernan, of Utica, N. Y. (W. Lee Helms, of New York City, of counsel), for defendant.

BRYANT, District Judge.

This is a suit for infringement of the Bauer patent, No. 1,794,358, as to claims 1, 5, 14, 19, 20, 21 and 31.

The defense to all claims except claim 19, is invalidity for lack of invention, and to claim 19 the defense is noninfringement and lack of invention. No claims of noninfringement, except as to claim 19, are advanced.

The machine disclosed in the Bauer patent is used in the manufacture of catamenial bandages, which are sold under the trade-name "Kotex." The evidence clearly shows that it has been a commercial success. It has tripled the production output over preceding machines, and at the same time greatly reduced the number of rejects. The Bauer machines have been in constant use since 1922. Manifestly, they have advanced the art of sanitary napkin manufacture.

The defendant in the manufacture of pads uses machines known as O'Neill machines. It has used two types. One, which we will refer to as the First O'Neill machine, was used until about 1932. This machine had the so-called "cross - feed" mechanism. In an infringement suit brought by this plaintiff against Diana Manufacturing Company, 18 F.Supp. 54, a concern using the so-called First O'Neill machine, all of the present claims were at issue. In that case the Bauer claims were held valid and infringed by the O'Neill machine. I understand that no appeal was taken. The O'Neill machine was rebuilt. We will refer to this as the Second O'Neill machine. Plaintiff admits that the Second machine does not infringe any of the claims unless it be claim 19. The other claims are not at issue against the Second machine and as against the First their validity only. Let us consider these claims first.

The Bauer patent file wrapper shows that many patents were cited against the Bauer application. The result was the rejection of several of his claims and amendment of several others. While this application was in the Patent Office an interference was filed by one Williams. Apparently Williams abandoned his claim of priority because later, by motion, he sought to dissolve the interference on the ground that the counts in the interference, and additional claims proposed by Bauer, were anticipated by prior art references and also patents relating to similar arts. Upon the hearing all references, with possibly the exception of the Anderson and Leibing patents, were cited. The Law Examiner found "the claims appear to be patentable distinct from one another and patentable over prior art." My attention has not been called to any further litigation over this matter, so I assume the Examiner's decision was accepted. I do not understand that claim 19 was at issue in this interference. Later plaintiff, in an attempt to avoid any claim that the Bauer patent is so broadly phrased as to cover prior art devices of a dissimilar nature, filed a disclaimer which removes from the scope of all of the Bauer patent claims "any machine or method except such as is used for making surgical pads or sanitary napkins, wherein a pad of soft, fibrous filling material is enclosed in a wrapper of gauze or similar soft, flexible material." This disclaimer was approved and held valid in the Diana Case and the decision seems to be in accord with United Chromium, Inc., v. International Silver Co., 60 F.(2d) 913, 914 (C.C.A.2d).

In this court in a case brought by plaintiff against O'Neill, the manufacturer, a consent decree sustaining the Bauer claims was entered. This is referred to only for the purpose of showing acquiescence in the validity and scope of the Bauer patent.

Defendant contends that, had the Law Examiner had before him the Leibing patent, No. 1,469,420, to supplement the Johnson and Johnson machine, in commercial use prior to Bauer, he would have been compelled to have held the Bauer claims invalid.

The Leibing patent was considered in the Diana Case. The Johnson and Johnson commercial use machine seems to be an improvement to the machine disclosed in the Marcus patent, No. 1,038,493, which was considered by the Examiner, and in the Diana Case.

The Bauer claims "are definitely restricted to the feeding of a strip of gauze and a strip of wadding." (Law Exam.) The Leibing patent covers a machine for the making of excelsior pads, excelsior or moss wadding wrapped in paper. That designed machine could not handle gauze. Without the Bauer patent as a guide, the problems to overcome in reorganizing the Leibing machine for the purposes here considered would be so intricate and difficult that they would constitute invention.

From the records in this case it is difficult to obtain, with any degree of accuracy, a picture of the working mechanism of the Johnson and Johnson machine. The file wrapper shows this machine was

given careful study by the Examiner. The present record does not contain facts sufficient to overcome the presumption of validity.

Claim 19 reads as follows:

"19. In a device of the class described, the combination of means for continuously feeding a strip of wrapping material, means for intermittently advancing a strip of filling material, a cutter operable to sever successive portions of the latter material from the end thereof, means actuated intermittently and independently of the movement of said wrapping and filling material for depositing the severed portions on said strip of wrapping material in spaced relation and means for folding said wrapping material over said filler portions."

The crux of this claim, as it affects the issues here, is the "means actuated intermittently and independently of the movement of said wrapping and filling material for depositing the severed portions on said strip of wrapping material in spaced relation." This means is not limited to the use of a cross-feed for the filler. In other words, the Bauer machine continuously feeds a strip of gauze. It has a cross-feed which intermittently advances the filling or padding, the same being cut as advanced. It has a depositing mechanism operating intermittently and independently of the other operations, but so synchronized that it is actuated according to a prearranged schedule in timed relation with the operation of other mechanisms of the machine. During every complete cycle of operation this mechanism will be positively actuated at a definite point of the cycle, regardless of what may have occurred to the pads or gauze. The pad, regardless of its movement, can only be deposited at the prearranged cycle. This machine was given careful study by the Examiner. The present record does not contain facts sufficient to overcome the presumption of validity.

The mechanism is a horizontal shelf or plate upon which the cut end of the filler strip falls from the cutter while the plate is at rest. The plate remains in suspense until the right point in the cycle, when it is withdrawn "to permit the severed pad to drop onto the continuously moving strip of gauze or other wrapping material." Thereafter the plate is returned and remains at rest to receive a succeeding

pad. There can be no question but that this depositing is actuated intermittently.

Defendant's depositing means consists of an immovable plate over which swings a striking arm or blade constantly moving with an endless chain to which it is attached. This chain with the attached arm is so synchronized with the rotary cutter at the delivery end of the machine that, at a certain point in the cycle of operation the arm attached to the chain, as it sweeps over the immovable plate, comes in contact with the pad, which has been deposited from the cutter, and pushes the same from the pad. The pushing arm or blade of defendant's machine is moving continuously, but it is so timed that the arm comes in contact with the pads intermittently. In other words, plaintiff has a movable plate so synchronized that it intermittently recedes and allows the pad to drop on the traveling gauze. Defendant has an immovable plate and an endless chain with arm attached continuously in motion. The movements are so timed that the arm intermittently comes in contact with the pad and pushes it from the plate on to the traveling gauze.

Plaintiff contends that defendant's depositing means, although entirely different in construction and operation from the Bauer device, is an infringement because it is "actuated independently and intermittently of the movements of said wrapping and filling material." If this be true, then plaintiff is entitled to protection from every mechanical means or device for intermittently depositing pads on gauze by a movement actuated independent of materials movement.

The history of this patent, when considered with prior art, does not warrant such a broad interpretation. In fact, such an interpretation might extend the claim to such unreasonable limits that it would be invalid.

Claim 25 of the original patent application was rejected on the Johnson and Johnson prior use. Bauer amended by adding "actuated intermittently and independently of the movement of said wrapping and filling material." With these words added the rejected claim was reconsidered and allowed as patent claim 19. The record does not disclose that the Anderson patent, No. 1,417,591, was considered. That patent disclosed means actuated intermittently and independently of the movement of wrapper and filler for de-

positing the filler on the wrapping material in spaced relation. While the machine contemplated by that patent would not in any manner be usable for surgical pad manufacture, yet the principle governing depositing means there disclosed is such that will prevent a patent for depositing means of sanitary napkins from receiving the broad interpretation it might otherwise have.

The disclaimer, while it limits the scope of the patent claims, does not entitle the patents to any broader or different interpretation of the scope of the patent in its limited field.

My decision seems to be in accord with the decision in the Diana Case. From the court's memorandum, I conclude that the question of infringement was not actively contested. The real contest seems to have been over the validity.

I hold that claims 1, 5, 14, 20, 21, and 31 are valid and infringed by use of the First O'Neill machine; that claim 19 has not been infringed by use of either machine. Plaintiff is entitled to an accounting.

Findings may be presented.